**Bee Chemical Company, a Corporation, Plaintiff-Appellee, v. Service Coatings, Inc., a Corporation, et al., Defendants-Appellants, Uniroyal, Inc., Intervenor.**

Gen. No. 53,254.

First District.

October 31, 1969.

Charles J. O'Laughlin and William A. Snow, of Chicago (Raymond, Mayer, Jenner & Block, Charles J. O'Laughlin, William A. Snow, Esq., Rummler & Snow, of Chicago, of counsel), for appellants.

Woodson, Pattishall & McAuliffe, Beverly W. Pattishall, Lawrence, Goldberg, Lawrence & Lewin, A. Charles Lawrence, for appellee.

James E. Hastings, Joseph V. Giffin, of Chicago (Chadwell, Keck, Kayser & Ruggles, of counsel), for Uniroyal, Inc., as amicus curiae.

GOLDENHERSH, P. J.

Defendants, Service Coatings, Inc., a corporation, hereafter called Service Coatings, Robert W. Moore, Robert

A. Bukvich, Ronald Widing and Caryl Wieneke, appeal from the order of the Circuit Court of Cook County finding them guilty of contempt for failure to comply with certain discovery rules and orders.

In its amended complaint, in seven counts, plaintiff, inter alia, alleges that the individual defendants were formerly in its employ, while so employed they acquired plaintiff's secret formulas and other secret information, and thereupon left its employ to become officers and agents of the "newly formed" corporate defendant. Plaintiff alleges further that defendants are wrongfully using its trade secrets in the manufacture of certain products used by the automobile industry.

Following service of notice to take depositions and request for production of documents and other matters, defendants moved for a protective order preventing "divulgement of its formulations." Other motions, to limit discovery, not here material, were filed by all parties, and the trial court entered a comprehensive order which included the following:

"13. Defendants produce, under Paragraph 6 of plaintiff's Supplementary Notice of Taking Depositions, all formulae, indicating component ingredients, for products manufactured or sold by Service Coatings, Inc., to the 'auto-soft' industry. Said formulae are to be given to counsel for plaintiff and shown only to Richard E. Jarzombek, Glenn K. Short, Thomas E. Hayden and Victor H. Rampelberg, plaintiff's employees assisting counsel for plaintiff in this case, and said formulae are to be used only for purposes of this case. Plaintiff may supplement this order specifying persons who may examine said formulae by naming outside experts to defendants within sixty days of the beginning of trial.

"14. Plaintiff produce, under Paragraphs 1 and 16 of defendants' Supplementary Notice of Taking

Depositions, all formulae, indicating component ingredients, developed on or before September 21, 1965, for products manufactured and sold by Bee Chemical Company to the 'auto-soft' industry, together with any memoranda of changes in formulae developed on or before September 21, 1965. Said formulae and changes in formulae are to be given to counsel for defendants and shown only to the individual defendants and Arthur Kopisch, president of the corporate defendant, and said formulae and changes in formulae are to be used only for purposes of this case. Defendants may supplement this order specifying persons who may examine said formulae by naming outside experts to plaintiff within sixty days of the beginning of trial.

"15. The Court also grants a protective Order to both parties so that their trade secrets shall remain trade secrets, and each party has a mutual restriction from using the formulae obtained from the other."

Defendants moved to vacate the order, the court heard testimony, denied the motion, and directed defendants to comply with its order. Defendants refused to produce the formulas, plaintiff moved for the imposition of sanctions, defendants admitted the material allegations of plaintiff's motion, the court found them in contempt of court, imposed a fine, and this appeal followed.

Shortly before the imposition of sanctions, Uniroyal, Inc. filed a petition for leave to intervene. The record does not reflect a written order allowing the petition, however in colloquy between court and counsel the court stated the petition was allowed. The status of Uniroyal in this appeal will be discussed later in the opinion.

The evidence shows that the formulas in question are used to produce a lacquer type coating for a vacuum-formed automotive door panel. This type of panel is

one of a number of products used in the automobile industry and classified as "auto-soft."

In support of defendants' motion to vacate the order, defendant Moore, vice-president of Service Coatings, testified that he had been employed for 13 years by United States Royal Rubber Company, now Uniroyal; during the last six years of his employment he was in charge of research; his work was principally with polymers, the same generic class of materials as are here involved, and was directed toward development of lacquer type materials. He left that position and entered plaintiff's employ. He was employed by plaintiff for two years, terminating in September 1965. After leaving plaintiff's employ, he organized Service Coatings. He described differences between the processes used by plaintiff and defendant, Service Coatings; Service Coatings submitted several materials to Uniroyal and after rejection "made some fairly radical departures from standard lacquer technology and submitted materials that looked fairly promising." Several were rejected, and finally one met the specifications. He stated that when he and the other defendants left plaintiff's employ, these coatings were not commercially available; at that time one raw material was available only as a pilot plant product, and other materials now utilized were not on the market. He denied that knowledge of plaintiff's formulas was of value in the discovery of a satisfactory product. He admittedly knew plaintiff's formulas for a coating for vacuum formed products but was not familiar with any of plaintiff's formulas specifically for vacuum formed door panels. He stated his knowledge of the substrate material to which the coating is applied, gained in his employment by Uniroyal, was the chief factor in his success.

Charles O'Shinski, employed at Uniroyal's plant in Chicago from 1952, plant manager from 1957 until short-

221

ly before the hearing, and now employed at Uniroyal's Port Clinton plant, testified that defendant, Service Coatings, after several submissions which were not satisfactory, had since early 1966 been delivering a coating which met the specifications of the customer for whom Uniroyal made the material used in the door panels. Uniroyal also purchased coatings from plaintiff, but plaintiff had not submitted a coating which met the specifications of Uniroyal's customer. He also testified that in a phone conversation with Moore it was agreed that Service Coatings would not, without Uniroyal's consent, sell the coating to anyone other than Uniroyal, although Uniroyal was free to develop other sources of supply.

Mr. Moore's version of the agreement is somewhat different, and he testified it was made at a luncheon meeting.

Jack Padgitt, process control manager for Uniroyal, testified with respect to tests of the products of plaintiff and defendant, Service Coatings. He testified that Uniroyal had obtained waivers of certain specifications from its customer in order to enable Service Coatings to get into production. He stated he had told Thomas E. Hayden, plaintiff's vice-president, he could not prove by tests there was a difference, insofar as pliability is concerned between plaintiff's coatings and those made by defendant, Service Coatings, however, General Motors, Uniroyal's customer, accepted the product made with defendants' coatings and rejected that made with plaintiff's coatings.

In opposition to the petition to vacate, T. E. Hayden, plaintiff's vice-president, testified plaintiff made submissions to Uniroyal for coatings for a vacuum formed door panel. He stated Mr. Padgitt told him plaintiff's N894 formula was satisfactory in every respect, however, he chose not to use it unless plaintiff could make the coating more pliable. Plaintiff sold some of the coating to

Uniroyal. The general type of formula for the coating was developed in the fall of 1965, the accepted submission (plaintiff's formula N894) was offered Uniroyal in July or August of 1966, and the sales were made in January and March 1967.

M. A. Self, plaintiff's president, recounted the history of the development of plaintiff's formulas as applicable to auto-soft products from 1956 to the time of the hearing. Plaintiff's first sales of coatings for the type of vacuum formed stock involved here were in 1956 or 1957, although it had sold coatings for a more rigid form of the product in 1954. It had sold coatings for vacuum formed door panels to O'Sullivan Rubber Co. in 1962. In total, plaintiff's personnel had spent twelve man years in the development of the formulas.

Defendants contend the record shows Service Coatings' formulas are unique, the order to produce is based on plaintiff's "unsubstantiated allegation" that its secrets had been appropriated, and disclosure of the formulas will destroy their value. They also argue that discovery should be deferred until the court can better appreciate the merits of plaintiff's claim.

██ The purpose of discovery is the ascertainment of truth and the expedition of the disposition of litigation. Monier v. Chamberlain, 35 Ill2d 351, 221 NE2d 410.

██ ██ Supreme Court Rule 219 vests the trial court with broad discretionary powers including the power to compel obedience to its orders by contempt proceedings. People ex rel. General Motors v. Bua, 37 Ill2d 180, 226 NE2d 6. Its orders, as with other discretionary matters, should not be disturbed, unless a reviewing court can say that its discretion has been abused.

Counsel have not cited, nor has our research disclosed, an Illinois authority precisely in point. There are, however, Federal decisions, and a New Jersey case which are of precedential value. In Grasselli Chemical Co. v.

National Aniline & Chemical Co., Inc., 282 F 379 (USDC NY) the court ordered the defendant to answer interrogatories. At page 381 the court said:

> "The defendant, however, urges that it should not be required to disclose its secret processes. No doubt the situation is difficult, on the one hand, to secure the plaintiff's right to get relevant evidence, and, on the other, to protect the defendant from disclosing secrets which are not material. In the end, the right of the plaintiff to bring out the truth must prevail, in so far as the inquiry is honestly limited to the actual issue of infringement."

In Melori Shoe Corp. v. Pierce & Stevens, Inc., 14 FRD 346 (USDC Mass) the defendant objected to interrogatories propounded by the plaintiff contending that under Rule 30(b) of the Federal Rules of Civil Procedure "secret processes, developments, or research need not be disclosed." In overruling the objections the court said at page 347:

> "While defendant has a legitimate interest in the protection of its trade secrets, that interest must yield to the right of the plaintiff to discover the full truth of the facts involved in the issues of the case."

In Bead Chain Mfg. Co. v. Smith, 1 NJ 116, 62 A2d 215 (Supreme Court of New Jersey) plaintiff sought to enjoin defendants from manufacturing and selling products which it alleged embodied trade secrets acquired by defendant, Smith, while in its employ. Plaintiff applied for an order to inspect certain machinery, tools, dies, layouts charts and formulas used by defendant. The application was denied. The Supreme Court of New Jersey reversed and in so doing said at page 216:

"While each case must be dealt with according to its own peculiar circumstances, we are impressed here by the fact that the defendant Smith after leaving the plaintiff's employment formed the defendant corporation, of which he is still the president, to manufacture the same line of goods as are produced by the plaintiff. Manifestly, the information which the plaintiff seeks to obtain by means of inspection is essential to a determination of the truth of the matters charged in the bill of complaint. It is information which it would be extremely difficult, if not impossible, for the plaintiff to prove without accurate data as to defendants' methods of manufacture. It thus appears that an inspection of the defendant corporation's property would aid in ascertaining the rights of the parties, and the present application therefore clearly falls within the scope of RS 2:99–2, NJSA, which gives the trial judge the power to order an inspection at such time and under such regulations as he shall prescribe. Such also is the spirit and contemplation of the provisions of our new rules concerning discovery and inspection of documents and property, Rules 3:34–1, 3:26–2.

"It is urged by the defendants that the allowance of an order to inspect will result in the disclosure to the plaintiff of the secrets and confidential working practices used in the manufacturing operations of defendant corporation. This argument overlooks the policy of the statute under which this application is made as well as the present express authority contained in the rules empowering the trial court to make such orders as will reasonably and appropriately safeguard the rights of the defendants, Rule 3:30–2. The presentation of the truth to the court is paramount; it must proceed unimpeded and unham-

pered despite claims of prying, where, as here, there exists the means of affording adequate protection against unwarranted intrusion and invasion of the rights of one party by another party."

■■ The testimony shows there is no practical method of discovery of Service Coatings' formulas from analysis of the product, and disclosure of the formulas is the only method of ascertaining the truth. In our opinion the trial court's order, as contemplated by Supreme Court Rule 201(c)(1), provides adequate safeguards for defendants' interests, and the order will be affirmed.

Defendants argue that the testimony of T. E. Hayden shows he was to be separated from plaintiff shortly after the hearing, and this demonstrates that limiting disclosure to a small number of designated individuals does not adequately safeguard defendant, Service Coatings' formulas. In our opinion the matter can be dealt with by a simple modification of the order.

■■ In its "amicus curiae" brief, Uniroyal argues the trial court abused its discretion in entering the order from which defendants appeal, and in refusing to permit Uniroyal to be heard before reaching its decision. Uniroyal has no standing as an appellant because the only order entered by the trial court affecting its rights is the allowance of its petition for leave to intervene. "An amicus curiae is 'not a party to the action, but is merely a friend of the court whose sole function is to advise, or make suggestions to, the court.'" Clark v. Sandusky, 205 F2d 915, 917. Under the definition cited, Uniroyal fails to qualify. We have nevertheless considered its contentions and find nothing in the authorities cited or its argument which persuades us that the trial court, in entering the order for disclosure, abused its discretion.

After careful examination of the record, we deem it appropriate to quote from People ex rel. General Motors

Corp. v. Bua, 37 Ill2d 180, 226 NE2d 6, wherein the court said at page 197 ". . . we believe the trial judge has exercised extreme patience in this case, and it is to be hoped that counsel will adopt a spirit of cooperation with regard to further discovery so that all material matters will be expeditiously produced in order that the truth seeking purposes of the rules will be served."

For the reasons set forth the order of the Circuit Court of Cook County in holding the defendants in contempt is affirmed.

Affirmed.

MORAN and EBERSPACHER, JJ., concur.