PROFESCO CORPORATION, Plaintiff and Counterdefendant, v. MARILYN O. DEHM, Defendant and Counterplaintiff-Appellee (Joseph Catherine *et al.*, Appellants).

Fourth District   No. 4—89—0665

Opinion filed April 5, 1990.

McCULLOUGH, J., concurring in part and dissenting in part.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman and David J. Novotny, of counsel), for appellants.

Roger B. Gomien, of Gomien, Root & Rigazio, of Morris, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In May 1988, Profesco Corporation brought suit against Marilyn Dehm, seeking $2,374.68 plus costs and attorney fees and claiming that she owed Profesco money pursuant to a note she allegedly signed. Profesco claimed Dehm owed this sum as a result of a premium finance agreement. Dehm answered the complaint by denying the allegations. She also asserted as an affirmative defense that the note did not contain her signature.

Dehm later filed a counterclaim against Profesco seeking damages under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 262 *et seq.*). In her counterclaim, Dehm alleged that the premium finance agreement was forged. Shortly thereafter, Dehm subpoenaed Charles Mitchell and Joseph Catherine, employees of John Hancock Life Insurance Company (Hancock), for deposition. (Hereafter, Mitchell, Catherine, and Hancock will be referred to as appellants.) The subpoena also required Mitchell and Catherine to produce certain documents of Hancock's investigative department.

With regard to one of the documents—a two-page report of Hancock's department of special activities—appellants refused to comply with the subpoena and filed several motions for protective relief, contending that the document in question was protected under the work-product doctrine. After an *in camera* inspection, the trial court ruled that while page one and the last paragraph of page two were protected under the work-product doctrine, the remainder of the document was not protected and was required to be produced. Appellants' attorney, David Novotny, then asked the trial court to enter an order of contempt so appellants could appeal the ruling as to the discoverability of the document. In response, the trial court held appellants' attorney in contempt of court and fined him $100 a day until the discovery order was complied with. This order is also before us on appeal.

Appellants first argue that the trial court erred in ordering the production of portions of the department of special activities report because it is privileged communications under the work-product doctrine.

■ It is well settled that pretrial discovery orders will not be interfered with on appeal in the absence of a manifest abuse of discretion affirmatively and clearly shown by the appellant. (*Snyder v. Lowrey* (1986), 141 Ill. App. 3d 30, 32-33, 489 N.E.2d 899, 901.) Because wide discretionary power rests in the trial court regarding pretrial discovery matters, appellants have the burden of showing that there has been a clear abuse of discretion. (*City of North Chicago v. North Chicago News, Inc.* (1982), 106 Ill. App. 3d 587, 593, 435 N.E.2d 887, 891; *Bicek v. Quitter* (1976), 38 Ill. App. 3d 1027, 1030, 350 N.E.2d 125, 127.) Here, we find no such abuse.

■ In Illinois, the work-product doctrine is found in Illinois Supreme Court Rule 201(b)(2) (107 Ill. 2d R. 201(b)(2)), which in pertinent part states the following:

> "Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." 107 Ill. 2d R. 201(b)(2).

In the present case, the first two paragraphs of the document at issue contain hearsay allegations that the insurance agent who wrote the policy being investigated has had several complaints made against him. The third paragraph of the document at issue relates to the company's ability to obtain access to information concerning this individual through its internal computer system.

■ We have evaluated these paragraphs in light of the criteria for determining whether they are work-product as discussed in *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 432 N.E.2d 250. We conclude that they do not " ' "reveal the shaping process by which the attorney[s] [have] arranged the available evidence for use in trial as dictated by [their] training and experience" ' (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 359[, 221 N.E.2d 410, 416]) [which would] therefore entitle[] [them] to protection." *Consolidation Coal*, 89 Ill. 2d at 110, 432 N.E.2d at 253.

While this information was obviously gathered for the purpose of litigation (albeit not this litigation), the subject matter of the three paragraphs in question does not remotely contain or disclose the theories, mental impressions, or litigation plans of the party's attorney as required by Rule 201(b)(2). Accordingly, these three paragraphs, attached to this opinion as an appendix, are discoverable.

Appellants next argue that the trial court erred when it fined their attorney $100 a day until he complied with the discovery order. Specifically, appellants argue that the fine should be vacated in light of the fact that appellants' attorney asked the trial court to enter an order of

contempt against him so that he could bring a good-faith appeal of the trial court's discovery order.

In their brief, appellants argue that *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 522 N.E.2d 273, *Pemberton v. Tieman* (1983), 117 Ill. App. 3d 502, 453 N.E.2d 802, *Bicek* (38 Ill. App. 3d 1027, 350 N.E.2d 125), and *Consolidation Coal* (89 Ill. 2d 103, 432 N.E.2d 250), support the proposition that contempt and fine orders imposed against a good-faith noncomplying party should be vacated if the discovery order is reversed on appeal, or if the noncomplying party is found to be in good faith. This argument, however, presumes the trial court is in agreement with the appellants' good-faith claims. That the appellants' attorney asked to be held in contempt so that he might bring this appeal in no way supports the notion that he would not have been held in contempt had he not requested that finding. On the record before us, we think it likely that appellants' attorney would have been held in contempt once he refused to present the document in question, whether he asked for that finding or not. Our assessment is based in part on the fact that after appellant's attorney was held in contempt with a $100 fine per day imposed, he asked the trial court to vacate the fine. The trial court refused.

In *Fine Arts Distributors v. Hilton Hotel Corp.* (1980), 89 Ill. App. 3d 881, 412 N.E.2d 608, the court was quite eloquent in stating that because the trial court is in the best position to determine whether a party's conduct amounts to a deliberate or contumacious flouting of judicial authority, the trial court's exercise of discretion regarding discovery violations should be afforded considerable deference. The court went on to state the following:

> "Additionally, the nature of the decision called for urges respect for the ruling below, in that the trial court is required to balance competing considerations. On the one hand, it is clear that the purpose of sanctions is to accomplish the object of discovery, and not to punish recalcitrant litigants. [Citation.] At the same time, courts have an interest in promoting the unimpeded flow of litigation, which requires that careful attention be paid to the prompt and orderly handling of discovery. 'Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitantly impose sanctions proportionate to the circumstances.' [Citation.] By serving notice that discovery is a serious phase of litigation and not an exercise in tactics, sanctions promote the flow of litigation and preserve the court's role in expediting that flow. [Citation.] *** [A]ny attempt by counsel to use discovery for strategic delay or calculated misin-

formation corrupts the truth-seeking process and must be sternly rebuked." *Fine Arts Distributors*, 89 Ill. App. 3d at 883-84, 412 N.E.2d at 610.

The deference to be given a trial court's determination of the degree to which a contemptuous refusal to comply with its order of discovery is in "good faith" is particularly compelling when, as here, the person or entity in contempt is not even a direct party to the litigation in which the issue arises.

■ Upon careful review of this record, we find that the trial judge could have reasonably found appellants to be abusing discovery. Ten discovery hearings were held, and Mitchell and Catherine's depositions had to be rescheduled several times. In light of these facts and the fact that a discovery order sanction will be upheld on review absent an abuse of discretion (*Fine Arts Distributors*, 89 Ill. App. 3d at 883, 412 N.E.2d at 610), we find no abuse of discretion in the trial court's assessment of a $100-per-day contempt fine. Under the peculiar circumstances of this case, however, we deem it unnecessary for us to definitively resolve the matter of whether the trial court viewed the behavior of appellant's attorney as being in "good faith." Instead, we remand this cause to the trial court for the limited purpose of determining whether it wishes to vacate some, none, or all of the fine it imposed. The trial court should make that determination consistent with the views expressed herein and the developments regarding this litigation since the fine was imposed that the trial court determines are relevant to the issue before it.

Affirmed and remanded with directions.

KNECHT, P.J., concurs.

## APPENDIX

MOWRY FALK, General Agent, Central Illinois General Agency, Peoria, Illinois. This source was contacted on November 10, 1986 by phone and the writer inquired if they had any correspondence or complaints from policyholders regarding Ray Jones in file. Mr. Falk stated he recalled at least three cases that he handled personally but added that Ray Jones' policyholders had been "giving us fits" for years. He recalled the name of one customer, Edward Bach, who allegedly gave Ray Jones a personal check for $2,700.00 in some type of "deal."

Mr. Falk recalled attending a recent President's Club where he met

with Mr. Sekara and a Mr. Paul Lutton of the Columbus General Agency and Falk learned that Mr. Lutton, while a marginal producer, was paid $100.00 a week by former Columbus General Agent Frank Clegg, to be a troubleshooter. According to Lutton, many of his activities involved resolving Ray Jones' policyholder complaints.

THOMAS NORTON, Consumer Relations Division, Home Office. This source was contacted the same date and he advised that via computer, their department is able to enter an Agent's number, and a record of their past complaints are stored and recalled. This search, however, must be authorized by the Law Department and if so authorized, conducted by Mr. Herb Keller of Consumer Relations, who has access to the system.

JUSTICE McCULLOUGH, concurring in part and dissenting in part:

The assessment of the $100-per-day fine for contempt should be vacated without remand. As the majority points out, the appellants' counsel "asked the trial court to enter an order of contempt so appellants could appeal the ruling as to the discoverability of the document." 196 Ill. App. 3d at 128.

Contrary to the majority's thinking "it likely that appellants' attorney would have been held in contempt" (196 Ill. App. 3d 130), this court should not hypothecate on what might have happened. The record before this court justifies a finding of "good faith." The trial court was not held in disdain or subjected to scorn. *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 848, 522 N.E.2d 273, 277.

The documents sought to be discovered were the property of a nonparty to the action. I disagree that because Novotny is a nonparty, the question of "good faith" loses importance.

As stated in *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 848, 522 N.E.2d 273, 277:

"The contempt order was entered at defendant's request, as it was the proper procedure to follow in order to test on appeal the trial court's discovery orders. [Citation.] Defendant was not being contemptuous in that the court was not held in disdain or subjected to scorn. [Citation.] Instead, defendant was acting in a good-faith effort to secure an interpretation of the two privileges in question."

I would vacate the fine levied against Novotny for contempt. In all other matters I would affirm the trial court.